IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIC D. WILLIAMS, | : Civ. No. 1:23-CV-1736 |
| Plaintiff, | : |
| v. | : (Chief Magistrate Judge Bloom) |
| JOHN DOE SCHWARTZ, et al., | : |
| Defendants. | : |

MEMORANDUM OPINION

I. Introduction

This case comes before us on a motion to dismiss or alternatively for summary judgment filed by Defendants Russell Keen, Bryan Price, Warden Fernando Garza, John Schwartz, Mark Turner, Casey Frisk, and Eric Bradley (collectively "defendants"). (Doc. 27). The plaintiff, Eric Williams, a federal inmate, filed suit alleging that the defendants violated his constitutional rights under the Fourth, Fifth, and Eighth Amendments to the United States Constitution. (Doc. 1 ¶ 49). The defendants argue that Williams did not adequately exhaust his administrative remedies in advance of filing suit, as required by the Prison Litigation Reform Act ("PLRA"), and that there is no genuine issue

of material fact on the question of exhaustion, meriting summary judgment.

After consideration, we agree, and we will grant the motion for summary judgment.

## II. Background

This case arises from allegations of abuse at the hands of prison officials. The plaintiff, Eric Williams alleges that a host of constitutional violations were perpetrated against him while he was incarcerated at the United States Penitentiary at Canaan ("USP Canaan"), and that his jailors were deliberately indifferent to violations of his constitutional rights. (*See generally* Doc. 1). Williams has organized his claims into three series of events.

Williams alleges the first events occurred between October 29 and November 5, 2021. (Doc. 1 ¶¶ 22-26). Williams states that after a fight between his cellmate and a third inmate, Williams was twice threatened with violence by prison officials. (*Id.* ¶ 22). Williams alleges he was then taken to the Special Housing Unit ("SHU") and placed under disciplinary segregation status. (*Id.* ¶ 23). On November 4, Williams contends he was made to strip, threatened with mace, and then made to discuss the

contents of his outgoing mail with one of the defendants, who called Williams a "snitch" and invited Williams' cellmate to assault Williams. (*Id.* ¶ 24-25). Williams alleges that the next day, defendant Frisk told an inmate to assault and intimidate Williams. (*Id.* ¶ 26).

Williams alleges a second series of events began on the morning of January 21, 2022. (Doc. 1 ¶ 27). While housed in the SHU, Williams claims the defendants grabbed him and slammed him to the concrete floor, injuring his right shoulder and back. (*Id.*). Williams alleges that he was then placed in hand restraints, severely injuring his wrists. (*Id.* ¶ 28). Williams further claims that he was then left in a cell for two and a half days, wherein he was "tortured, tormented, terrorized and abused" by the defendants and their agents. (*Id.* ¶ 29). During that time, Williams alleges he was painfully restrained, threatened with being struck in the head by an unnamed object, had a riot shield coated in pepper spray held up to his face, and was denied eight consecutive meals. (*Id.* ¶¶ 30-33).

The third allegation is of an isolated incident of sexual violence. Williams alleges that on May 8, 2022, one of the defendants sexually assaulted him with an unnamed object, while another defendant watched

and did not attempt to stop the abuse. (Doc. 1 ¶ 34). Williams further alleges that he was denied medical care for the injuries inflicted by this assault. (*Id.* ¶ 35). Williams asserts that nobody stopped or investigated these attacks, nor did they monitor Williams. (*Id.* ¶¶ 37-39). Williams argues that the defendants were therefore recklessly indifferent to the violations of his rights. (*Id.* ¶¶ 41-44). Williams alleges a laundry list of physical and mental injuries as well as financial loss resulting from these three episodes. (*Id.* ¶¶ 45-47).

After Williams filed this lawsuit, the defendants moved for and were granted additional time to respond to the complaint. (Doc. 24). They filed the instant motion on May 6, 2024, moving both to dismiss the complaint and for summary judgment in favor of their affirmative defense: that Williams has failed to exhaust his administrative remedies before proceeding to suit. (Doc. 29 at 2).

The issues have been fully briefed and are now ripe for resolution. (Docs. 29, 30, 36). After consideration, we conclude that there are no genuine disputes of material fact with respect to Williams' failure to exhaust his administrative remedies. Accordingly, we will grant defendants' motion for summary judgment.

4

## III. Discussion

### A. Motion for Summary Judgment – Standard of Review

The defendants have filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Rule 56(a) provides that a court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The materiality of the facts will depend on the substantive law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under governing law" will preclude summary judgment. *Id.* A dispute is only genuine if a reasonable juror could find in favor of the nonmoving party. *Id.*

The moving party bears the initial burden to "demonstrate the absence of a genuine issue of material fact," relying on pleadings, depositions, affidavits, and other evidence in the record. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant "successfully points to evidence of all of the facts needed to decide the case on the law," the nonmovant can still defeat summary judgment by pointing to evidence in the record which creates a genuine dispute of material fact and from

5

which a jury could find in its favor. *El v. Southeastern Pennsylvania Transp. Auth. (SEPTA)*, 479 F.3d 232, 238 (3d Cir. 2007). However, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). A court may not make credibility determinations or weigh the evidence, but "must view the facts in the light most favorable to the non-moving party." *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

### B. The Defendants' Motion for Summary Judgment will be Granted.

Here, the defendants argue that they are entitled to summary judgment because Williams failed to exhaust his administrative remedies. For his part, Williams argues that he was intimidated by the defendants, which prevented him from exhausting his remedies, and thus, his failure to exhaust should be excused. After consideration, we will grant the defendants' motion for summary judgment.

#### 1. Effect of Local Rule 56.1

Local Rule 56.1 imposes certain filing requirements on both parties when making or responding to a motion for summary judgement:

> A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried.
>
> The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, *responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried.*
>
> Statements of material facts in support of, or in opposition to, a motion shall *include references to the parts of the record that support the statements.*
>
> All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

Local Rule 56.1. (emphasis added).

Here, the defendants complied with the local rule, attaching a short and concise statement of material facts to their motion for summary judgment. (Doc. 28). As will be discussed below, these facts establish that none of the ten distinct administrative remedies Williams sought reached exhaustion. (*Id.*). In support of these facts, defendants attached multiple exhibits, citing to them in each paragraph (excepting ¶ 33), fulfilling the requirement of reference to the record. (*Id.*).

7

Williams, however, has not complied with Local Rule 56.1. "To comply with Local Rule 56.1, Plaintiff should (1) clearly and unequivocally admit or deny whether each fact contained in Defendant's statement of facts is undisputed and/or material, (2) set forth the basis for any denial if any fact is not admitted in its entirety, and (3) provide a citation to the record that supports any such denial." *Scott-Moncrieff v. Lost Trails, LLC*, 2018 WL 4110742, at *1 (M.D. Pa. Aug. 29, 2018) (citation omitted). Here, Williams simply filed his own statement of material facts, which neither admits nor denies the averments set forth in the defendants' statement of facts. (Doc. 31). Additionally, Williams fails to cite record evidence supporting his own statement of material facts. (*Id.*).

Given that Williams has failed to comply with this Local Rule, it is within our discretion to deem the defendants' uncontroverted facts admitted. *See Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018) (finding that a court confronted with a failure to comply with LR 56.1 "is in the best position to determine . . . the appropriate sanction for such noncompliance."). However, as we will discuss, even crediting Williams unreferenced factual statements, we conclude that there is no

genuine dispute of material fact regarding Williams' failure to exhaust his administrative remedies. Accordingly, we will grant the defendants' motion.

2. The Undisputed Facts Show Williams Did Not Exhaust His Available Remedies.

Under the PLRA, prisoners are required to present their claims through a prison's administrative process prior to bringing claims in federal court. 42 U.S.C. § 1997e(a). This applies to any claim arising in the prison setting, regardless of the relief sought by the prisoner. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). The PLRA's exhaustion requirement is mandatory, provided that administrative remedies are available to the prisoner. *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000); 42 U.S.C. § 1997e(a). A failure to exhaust available administrative remedies bars an inmate from bringing a suit in federal court. *Ghana v. Holland*, 226 F.3d 175, 184 (3d Cir. 2000).

The PLRA's "proper exhaustion" of administrative remedies requirement means that the inmate must comply with the procedural requirements of the prison's grievance system. *Woodford v. Ngo*, 548 U.S. 81, 84, 90 (2006). This includes an obligation to exhaust all available

appeals. *See Gross v. Warden, USP Canaan*, 720 F. App'x 94, 98 (3d Cir. 2017) (finding that the plaintiff "failed to exhaust his administrative remedies based on his failure to complete an appeal to the Central Office."). However, an inmate must only exhaust those administrative remedies that are "available." *Id.* at 93.

The Supreme Court has found three circumstances in which an administrative remedy is "not capable of use to obtain relief" and is, thus, not "available." *Ross v. Blake*, 578 U.S. 632, 643-44 (2016). One of those circumstances, which Williams argues exists here, is "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644. The Supreme Court has held that in such instances, "interference with an inmate's pursuit of relief renders the administrative process unavailable." *Id.* The Third Circuit has further instructed that where remedies are "unavailable" under this theory, "filing suit [is the plaintiff's] only method to advance his claim." *Rinaldi v. United States*, 904 F.3d 257, 267 (3d Cir. 2018) (internal citation omitted).

Of significance to this motion are the processes by which an inmate incarcerated in the Bureau of Prisons ("BOP") may file an administrative

remedy. First, inmates are directed to informally resolve the issue with a staff member, if possible. 28 C.F.R. 542.13(a). If informal resolution is not possible, an inmate may file a written Administrative Remedy Request to the warden "20 calendar days following the date on which the basis for the Request occurred." *Id.* § 542.14(a). The warden shall respond to the Request within 20 calendar days. *Id.* § 542.18. The inmate may appeal the warden's response to the "Regional Director within 20 calendar days of the date the Warden signed the response," and the Regional Director must respond within 30 calendar days *Id.* §§ 542.15(a), 542.18. If an inmate is dissatisfied with the Regional Director's response, his final appeal would be to the General Counsel "within 30 calendar days of the date the Regional Director signed the response[,]" and the General Counsel must respond within 40 calendar days. *Id.* §§ 542.15(a), 542.18.

Here, the undisputed facts establish that Williams began, but did not complete, administrative review of ten distinct claims. (*See generally*, Doc. 28-4, Doc. 29). Williams submitted six filings under remedy No. 1105602, and the records show that after being denied for the sixth time, these claims were never resubmitted nor appealed. (Doc. 28 ¶ 10; Doc. 28-4 at 2-7). Six other remedies (Nos. 1115092, 1118548,

11

1135494, 1137152, 1144272, and 1145269) concerned complaints about staff members at USP Canaan, all of which were rejected for procedural shortcomings (including, *inter alia*: submission at the wrong level or wrong institution; failure to attempt informal resolution before remedy request; untimeliness; and submitting too many pages). (Doc. 28 ¶¶ 12-46; Doc. 29 at 7-31). The final three remedies (Nos. 1109505, 1108438, 1114843) all suffered the same fate: the remedies were rejected for errors that Williams did not cure or appeal. (Doc. 28 ¶¶ 47-60; Doc. 29 at 3-27).

This record evidence shows that each attempted remedy was rejected, and that Williams had the opportunity to appeal or cure each deficient remedy and failed to do so. (Doc. 28 ¶¶ 12-49; *See also* Doc. 28-4). None were ever resolved, nor did they reach the final potential administrative remedy, appeal to the General Counsel. (*Id.*). Accordingly, the record demonstrates that Williams failed to exhaust his administrative remedies. Williams does not dispute these findings, but instead argues that these remedies were "unavailable" to him due to the defendants' intimidation and thus, his failure to exhaust should be excused.

The Third Circuit has set forth the proper test for determining if administrative remedies are unavailable to an inmate due to intimidation. *Rinaldi*, 904 F.3d 268 (citing *Turner v. Burnside*, 541 F.3d 1077, 1084-86 (11th Cir. 2008)). That test requires an inmate to show "(1) that the threat was sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance and (2) that the threat actually did deter this particular inmate." *Id.* at 269. The burden to show remedies were "unavailable" rests upon Williams. *Id.* at 268.

Williams argues that because he did not submit any administrative remedies within 20 days of any of the complained-of events, it necessarily follows that he was deterred from filing remedies by intimidation, fulfilling the second element.[1] (Doc. 30 at 7). Thus, Williams invites us to infer that because he did not follow the administrative remedy process, he must have been intimidated and thus, his failure to exhaust should be

---

[1] He claims that defendants have conceded this point: "[T]he threats actually did deter Plaintiff from exhausting his administrative remedies, as conceded by defendant." (Doc. 30 at 6). Williams badly misrepresents defendants' position, which is actually the exact opposite: "Williams has failed to demonstrate that he was deterred by the alleged intimidation . . . ." (Doc. 36 at 14).

excused. However, Williams must point to some "basis in the record from which the district court could determine that a reasonable prisoner of ordinary firmness would have *understood the prison official's actions to threaten retaliation* if the prisoner chose to utilize the prison's grievance system." *Rinaldi*, 904 F.3d 269 (quoting *McBride v. Lopez*, 807 F.3d 982, 988 (9th Cir. 2015)) (emphasis added). Williams does not allege any actions by prison officials related to his filing of remedies, much less an action that would objectively chill use of the grievance system.

Further, Williams has not shown that he was subjectively intimidated such that he was unable to file the appropriate administrative remedies. Courts have held that some specific allegation of actions or threats by prison officials are required to find subjective intimidation. *Rinaldi*, 904 F.3d 269; *Cf, Handy v. Shaikh*, 959 F.3d 578, 589 (3d Cir. 2020) (finding the subjective prong met where prison officials apparently denied plaintiff access to the PLRA guidelines for appeals). However, other than merely alleging that the defendants engaged in a "pattern of harassing and violent behavior" toward him (Doc. 30 at 5), Williams fails to sufficiently show that he was subjectively deterred from filing his administrative remedies due to threats or intimidation. Rather,

the uncontroverted facts set forth by the defendants—that Williams filed numerous administrative remedies, including some against the defendants—establish that Williams was not deterred from filing administrative remedies. *See Rinaldi,* 904 F.3d 269 ("Evidence that an inmate continued to file substantially similar claims through the same grievance process, for example, may be sufficiently compelling to defeat an inmate's assertion of subjective deterrence."); *Knutson v. Hamilton*, 2021 WL 4163981, at *5 (W.D. Va September 13, 2021) ("[plaintiff's] filing of other administrative remedies severely undermines any suggestion that any alleged threats subjectively deterred him.").

Here, the only allegations of threats are generalized and existential, unsupported by the facts in the record. The defendants, in contrast, point to uncontroverted facts tending to show there was no intimidation. Accordingly, we find that there is no genuine dispute of the material facts, which demonstrate both that Williams failed to exhaust his administrative remedies and that those remedies were not "unavailable" to him. As a matter of law, Williams cannot proceed in a lawsuit where his available administrative remedies have not been

exhausted. 42 U.S.C. § 1997e(a). Therefore, we will grant the defendants' motion for summary judgment.

## IV. Conclusion

For the foregoing reasons, the defendants' motion for summary judgment (Doc. 27) will be GRANTED.

An appropriate order follows.

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge

Dated: November 13th, 2024